In re Marvin I. THOMPSON, Jr. and wife Janice T. Thompson, Debtors.

Douglas Q. WICKHAM, Plaintiff,

v.

UNITED AMERICAN BANK IN KNOXVILLE; J. Michael Winchester, Substitute Trustee; Joe B. Warwick and wife, Betty M. Warwick; and R. Wayne Warwick and wife, Mary E. Warwick, Defendants.

Bankruptcy No. 3–81–1173.
Adv. No. 3–81–0774.

United States Bankruptcy Court,
E. D. Tennessee, N. D.

Feb. 4, 1982.

Douglas Q. Wickham, Knoxville, Tenn., trustee.

J. Michael Winchester, Knoxville, Tenn., for United American Bank and J. Michael Winchester, Substitute Trustee.

David E. Smith, Knoxville, Tenn., for Joe B. Warwick, Betty M. Warwick, R. Wayne Warwick, and Mary E. Warwick.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CLIVE W. BARE, Bankruptcy Judge.

THIS matter came on for trial on January 26, 1981. The Court, after full consideration of this matter and being fully advised in the premises, makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

I. On July 24, 1981, Marvin I. Thompson, Jr. and wife, Janice T. Thompson (the "Debtors") filed a joint petition under Chapter 13 of Title 11 of the United States Code (11 U.S.C. § 1301 et seq.) in the United States Bankruptcy Court for the Eastern District of Tennessee, Northern Division. The aforesaid proceedings were converted to a Chapter 7 proceeding on the 23rd day of October, 1981. Douglas Q. Wickham, the Plaintiff herein, was duly appointed Trustee.

II. On May 26, 1981, the Defendant, J. Michael Winchester, as Substitute Trustee (the "Substitute Trustee") for the Defendant, United American Bank in Knoxville (the "Bank") conducted a foreclosure sale pursuant to the terms and provisions of a certain Deed of Trust executed and delivered by the Debtors to the Bank on the 24th day of May, 1979. The property which is the subject of this lawsuit was purchased by the Defendants, Joe B. Warwick, Betty M. Warwick, R. Wayne Warwick, and Mary E. Warwick (the "Warwicks") at the aforesaid foreclosure sale for the sum of $52,500.00. This adversarial proceeding was originally initiated by the Debtors whereupon the Trustee was substituted as party Plaintiff pursuant to Order of the Court, it appearing that the cause of action passed to the Trustee pursuant to 11 U.S.C. § 541.

III. The parties hereto have stipulated that the only issue for determination by the Court is whether or not the Trustee can avoid and set aside the transfer (foreclosure sale) in question pursuant to 11 U.S.C. § 548(a)(2)(A) and, more particularly, whether or not the amount received from the foreclosure sale of said property was "less than a reasonably equivalent value in exchange for such transfer". The parties have stipulated that the Debtors were either insolvent at the time of the foreclosure sale or were rendered insolvent by said sale.

IV. The real property which is the subject of the lawsuit was the principal residence of the Debtors and was purchased by

them on March 22, 1973 for $36,000.00. The Plaintiff contends that the fair market value of said property at the time of the foreclosure sale was $80,400.00 and that the $52,500.00 purchase price paid by the Warwicks at the foreclosure sale was "less than a reasonably equivalent value in exchange for such transfer" within the meaning of 11 U.S.C. § 548(a)(2)(A). The Plaintiff seeks to avoid and rescind the transfer for the purpose of capturing the alleged equity in said property for the benefit of general creditors.

V. The Defendants contend that the fair market value of said property at the time of sale was approximately $63,900.00 and that the $52,500.00 purchase price was a fair consideration for the transfer to the Warwicks. The Defendants stipulated that the foreclosure sale was a "transfer" within the meaning of the aforesaid statute.

VI. At the time of the trial of this case, the Plaintiff produced an expert witness to testify concerning the fair market value of the subject property on the date of the foreclosure sale, May 26, 1981. This expert witness testified that the subject property had a fair market value of $80,400.00 at the time of sale and a copy of the appraisal conducted by the expert witness was introduced as evidence. Under cross examination, the expert witness for the Plaintiff conceded that his appraisal was based on replacement value since he was unable to ascertain comparable property transfers on which to base his valuation. Further cross examination revealed that Plaintiff's expert witness had relied on a standardized publication in the field of real estate known as the *Marshall and Swift Handbook* as the basis of the values and factors used in his appraisal. After conceding that the subject property was in need of certain repairs which he estimated at $1,500.00, Plaintiff's expert concluded that the subject property had a value of approximately $78,900.00 at the time of the foreclosure sale.

VII. The Defendants produced an expert witness to testify on their behalf. This witness stated that the fair market value of the subject property at the time of the foreclosure sale was approximately $65,000.00. The Defendants' expert witness placed considerable reliance on four comparable property transfers ranging in price from $64,000.00 to $70,000.00. Detailed comparisons were made by the Defendants' expert witness between the subject property and the comparable property whereupon the expert witness concluded that the fair market value of the subject property was $65,000.00.

VIII. The expert witness for the Defendants also had personally examined the subject property and had submitted an appraisal wherein he stated that the replacement value of said property was $63,900.00. The witness based his values on the factors and guidelines set forth in the aforesaid standardized reference, *Marshall and Swift Handbook*, but disagreed with the analysis asserted by the expert witness for the Plaintiff. The Defendants' expert witness stated that the Plaintiff's expert witness had multiplied the total square footage of heated, living space in the subject property by an improper factor which had resulted in the higher appraisal figure. This testimony revealed that in determining the value of the basement area of the subject property, the proper factor for determining such value is somewhat less than the factor used by the Plaintiff's witness. In effect, the Plaintiff's witness had determined the value of the basement area of the subject property using the same factor used for determining the value of finished living space on the main floor of said property. The Defendants' expert witness testified that such an analysis was improper under standard appraisal procedures as set forth in the *Marshall and Swift Handbook*.

IX. The Court, after considering all the evidence in this case, determined that the fair market value of the subject property was $65,000.00 at the time of the foreclosure sale. The evidence produced by the Defendants firmly establishes this amount as the fair market value of the subject property at the time of sale from both a comparable sales basis and replacement value analysis.

X. The Court further finds that the evidence presented by the Plaintiff's expert witness confirms the evaluation of the subject property as set forth by the Defendants' expert witness when the proper valuation factors are inserted into the analysis set forth by the expert witness of the Plaintiff.

## CONCLUSIONS OF LAW

I. This matter is properly before this Court pursuant to 11 U.S.C. § 548(a)(2)(A) for determination as to whether or not the price obtained at the foreclosure sale was less than a reasonably equivalent value in exchange for such transfer entitling the Trustee to avoid or otherwise set aside the transfer as a fraudulent conveyance.

■ II. In determining whether a reasonably equivalent value was paid by the Warwicks for the purchase of the subject property, the fair market value of said property must be determined as of May 26, 1981, the date on which the foreclosure sale was conducted by the Substitute Trustee at the instance of the Bank.

■ III. It is generally recognized that comparable sales in the vicinity of the subject property produce the best guides to determine fair market value. *Cowen v. Guidry*, 274 F.Supp. 22 (U.S.D.C.E.D.La. 1967).

■ IV. An evaluation of the testimony of the expert witnesses produced by both the Plaintiff and the Defendants, and especially the evaluation of the sales of comparable properties adjacent to the subject property which occurred within the period of time reasonably near to May 26, 1981, convinces the Court that the fair market value of the subject property at the time of the foreclosure sale was $65,000.00. The sum of $52,500.00 paid by the Warwicks for the subject property on this day was a reasonably equivalent value in exchange for such transfer.

■ V. As a general rule, Courts that have considered the issue of whether or not a reasonably equivalent value was received for a transfer under 11 U.S.C. § 548(a)(2)(A) have set aside transfers of property which produced less than 70% of the fair market value of said property at the time of the transfer. *Durrett v. Washington National Ins. Co.*, 621 F.2d 201 (5th Cir., 1980). In the subject case, the sales price of $52,500.00 represents 80.8% of the fair market value of the subject property at the time of the foreclosure sale.

VI. The Court holds that the sum of $52,500.00 paid by the Warwicks pursuant to their bid at the foreclosure sale of the subject property was a reasonably equivalent value for the subject property which was worth $65,000.00 at the time of such transfer and that, accordingly, the Trustee in Bankruptcy cannot avoid the transfer of the interests of the Debtors in the subject property pursuant to 11 U.S.C. § 548(a)(2)(A). Therefore, the Trustee's Complaint to Set Aside the Transfer is dismissed and judgment shall be entered for the Defendants accordingly.