In re PERDIDO BAY COUNTRY CLUB ESTATES, INC. and Vermont Land Corporation, Debtors.

PERDIDO BAY COUNTRY CLUB ESTATES, INC. and Vermont Land Corporation, Plaintiffs,

v.

The EQUITABLE TRUST COMPANY, Defendant.

Bankruptcy Nos. 81–02157–BKC–TCB, 81–02158–BKC–TCB.
Adv. No. 82–0128–BKC–TCB–A.

United States Bankruptcy Court, S. D. Florida.

Aug. 19, 1982.

Edward A. Kaufman, Miami, Fla., for defendant Britton Cohen et al.

Donald N. Rothman, Lewis A. Kann, Baltimore, Md., John E. Venn, Jr., Smith, Sauer & Venn, Pensacola, Fla., for defendant.

Robert F. O'Malley, Jr., Smathers & Thompson, Miami, Fla., for plaintiff.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The debtors seek the avoidance under 11 U.S.C. §§ 1107(a) and 548(a)(2)(A) and (B)(i) of separate real property transfers by each debtor to Equitable (C.P. Nos. 1, 17 and 20). The matter was tried on July 27 and 28. Equitable's motion to dismiss Vermont Land's petition (C. P. No. 65a) which had been denied on July 19 without prejudice (C.P. No. 99) was also renewed and considered at the trial.

A threshold issue is presented by Equitable's eighth affirmative defense (C.P. No. 17) challenging jurisdiction upon the ground subsequently adopted by the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). During argument, the parties agreed that the Supreme Court's stay of judgment in that case confirms this court's jurisdiction to adjudicate these issues at least until October 4, 1982. Only acts of this court after that date are dependent upon future remedial action by Congress.

The Court said:

"The judgment of the District Court is affirmed. 12 B.R. 946. However, we stay our judgment until October 4, 1982. This limited stay will afford Congress an opportunity to reconstitute the bankruptcy courts or to adopt other valid means of adjudication, without impairing the interim administration of the bankruptcy laws."

Unless the effect of this stay is to confirm the exercise of this court's jurisdiction at least until October 4, 1982, every interim act of the Bankruptcy Court would be suspect and subject to jurisdictional challenge after October 4. This would inevitably produce the very impairment of interim administration which the Court was at pains to avoid.

The transfer from Perdido occurred on March 5, 1981, when the clerk of the U. S. District Court for the Northern District of Florida issued a certificate of title to Equitable, following a foreclosure sale ordered by that court. It involved some 2,900 acres of land near Pensacola, portions of which were improved with a country club and other improvements. Perdido now contends that it "received less than a reasonable equivalent value in exchange for such transfer." I disagree with Perdido.

The transfer from Vermont Land occurred five months later on August 5 and 7, 1981, after that debtor's right of redemption expired under the terms of a 1980 Agreement, when Vermont courts entered consent foreclosure orders vesting title in Equitable without sale. It involved 3,930 acres of vacant land in two counties in southern Vermont. Vermont Land contends that it, too, "received less than a reasonable equivalent value in exchange for such transfer". I agree with Vermont Land.

In neither instance is there any suggestion of fraud, mistake, accident, or surprise or irregularity in the transfer.

The two transfers are challenged in this single action, because the two debtors are wholly owned subsidiaries of a parent corporation not in bankruptcy, Cavanagh Community Corporation, and because the debtors were jointly liable to Equitable upon a single debt which dates back to a 1976 mortgage. Both transfers were made in compliance with a Settlement Agreement executed between the parties on December 31, 1980, when the Vermont property was pledged as additional collateral. Though the history of the debt has absorbed much of the parties' attention here, it is essentially irrelevant to the matters before me.

■ Under §§ 1107(a) and 548(a)(2)(A) and (B)(i), the debtors assert a purely statutory cause of action, which permits them to avoid transfers as constructively fraudulent, irrespective of the parties' actual intent, upon proof of three elements: (1) the transfer was made to defendant within one year before December 30, 1981, when these debtors filed for bankruptcy; (2) for which each debtor received less than reasonably equivalent value; and (3) that each debtor was then insolvent or became insolvent by its transfer. 4 *Collier on Bankruptcy* (15th ed.) ¶ 548.03.

■ The Eleventh Circuit, which includes this court, has formally adopted Fifth Circuit precedent. I am, therefore bound by *Durrett v. Washington National Insurance Co.,* 5 Cir. 1980, 621 F.2d 201, 203, where the Court held that a Texas private, non-judicial foreclosure sale under a deed of trust for 57.7 percent "of the fair market value of the property" was not for a "fair equivalent". This case was decided under § 67(d) of the former Act, but the operative provisions under the former Act are indistinguishable from the provisions of § 548(a)(2) of the present Act.

In *Durrett,* the Court noted that:

"We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property."

The only case cited for this statement involved a voluntary transfer. There is no presently reported application of either § 67(d) or § 548(a)(2) to a judicial foreclo-

sure sale or to any public foreclosure sale. In fact, the only presently reported cases applying either the old or the new bankruptcy provision to any foreclosure sale are *Durrett* and *Abramson v. Lakewood Bank and Trust Co.,* 5 Cir. 1981, 647 F.2d 547, cert. den., —— U.S. ——, 102 S.Ct. 1038, 71 L.Ed.2d 320, which followed *Durrett* by reversing a summary judgment entered before and contrary to *Durrett.* Like *Durrett, Abramson* involved a Texas private sale under a deed of trust.

I conclude that *Durrett* is controlling with respect to the Vermont transfer involved in this case, but that it must be applied with caution, if at all, to the Florida transfer.

We turn now to separate consideration of the two transfers.

*Florida transfer.* Perdido has satisfied me with respect to the first and third elements in its cause of action, but not the second:

> "the debtor (2)(A) received less than a reasonably equivalent value in exchange for such transfer".

In this context:

> " 'value' means ... satisfaction ... of a present or antecedent debt of the debtor..." § 548(d)(2)(A).

Because Equitable's foreclosure of its first lien eliminated a second lien held by third parties, Royal American and Bankers Life, and because neither lien holder preserved any deficiency claim against Perdido, the debts owed Royal American and Bankers Life as well as those owed Equitable were satisfied by the foreclosure sale. The value received by Perdido, in exchange for the Florida property, therefore, was $7.9 million.

The opinion evidence as to the market value of the Florida property at the time of the transfer ranged from $7.8 to $13.4 million. I find from the conflicting evidence that the Florida property had a market value of at least $7.9 million but not more than $11.2 million. That is to say the market value at least equalled the total of the liens against the property and did not ex-

ceed the outer limit suggested by *Durrett.* Seventy percent of $11.2 million is the $7.9 million which Perdido received. No practical purpose is served in this case by seeking a more definitive market value.

In arriving at this conclusion, I have considered, along with the opinion evidence before me, the circumstances of the judicial sale. It was conducted in Pensacola by a disinterested special master appointed by the District Court. He held an open public auction attended by over 100 interested parties. The sale had been advertised in a general newspaper once a week for four consecutive weeks. The only bid received was that of Equitable. Had the bulk market value of this property on that day exceeded $11.2 million, which is 41 percent more than the sum necessary to discharge all liens, it is difficult to believe that no one else would have offered to buy the property at the sale or that the debtors' parent, Cavanagh, before the sale would have failed to sell the property or enough of the property to discharge the liens. Cavanagh is a nationally recognized land developer. At the time of sale, the Florida and the national real estate market was extremely depressed. There is no evidence of any offers to buy the Florida property either before or after the judicial sale for any sum that approaches $11.2 million.

The fact that neither Equitable nor the second mortgagee sought a deficiency decree supports the conclusion that the property was worth at least $7.9 million, the extent of the two liens.

 Secondly, a foreclosure sale conducted under § 45.031, Florida Statutes, as this one was, is subject to challenge if the sale price was so inadequate as to indicate fraud or other irregularity. Unless challenged successfully:

> "The amount of the bid for the property at the sale shall be conclusively presumed to be sufficient consideration for the sale." § 45.031(7).

Perdido never availed itself of this judicial remedy nor has it ever suggested that there was any irregularity in this sale. It is, therefore, bound by the statutory presump-

tion and it is collaterally estopped to challenge the sufficiency of the consideration received at that sale. *Wise v. Tucker,* Fla. App.1981, 399 So.2d 500, 502. One who claims under one who is estopped is bound by the estoppel. *LaMar v. Lechilder,* 1939, 135 Fla. 703, 185 So. 833. Therefore, the debtor-in-possession stands in the debtor's shoes here.

■ The holding in *Coleman v. Alcock,* 5 Cir. 1960, 272 F.2d 618, 622 is distinguishable in this case for the reason given by the Court in Coleman:

> "If the bankrupt's property is involved the trustee will be bound by the judgment to the same extent as any other person who succeeds to an interest in property pending litigation.... The fact that the trustee did not intervene is of no real moment. If it is a suit involving title to property, the trustee is bound whether he intervenes or not."

I believe a trustee would also be estopped in this instance.

The debtors argue that because § 1107 gives a chapter 11 debtor-in-possession the same rights and powers granted a trustee and since a trustee might not be estopped, the debtor-in-possession should not be estopped. I disagree even if a trustee would not be estopped. The legislative purpose of § 548(a)(2) is to permit the avoidance of a fraudulent transfer. That purpose is not served by permitting a debtor to relitigate in the bankruptcy court an issue already resolved against it by another court, upon the transparent pretext that it does so on behalf of its creditors. There is nothing in the legislative history that supports the debtors' argument. I see no basis here to ignore estoppel, which has been properly pleaded by Equitable.

*Vermont transfer.* Vermont Land Co. has satisfied me as to all three elements with respect to the Vermont transfer.

■ The first element is clearly established. I reject Equitable's contention that the transfer occurred before August 1981. § 548(d)(1); *Durrett v. Washington National Insurance Co.,* supra, at 204. I also reject Equitable's argument that the term "transfer" does not include an involuntary, judicial transfer. § 101(40); see also § 1(30) of the former Act. *Durrett v. Washington National Insurance Co.,* supra, at 204.

■ The second element is equally clearly established. The opinion evidence of the value of the Vermont Property ranges from $749,000 to $1.7 million. It is admittedly worth at least $749,000. Because Equitable's debt was fully satisfied five months earlier by the Florida transfer, Vermont Land Co. received nothing in exchange for the transfer of its property.

■ Collateral estoppel is not applicable here, because there was no statutory presumption under Vermont law and no available procedure to challenge the sufficiency of the consideration for the transfer. In a Vermont strict foreclosure, there is no sale. The court's essential discretionary function is to fix the expiration date of the mortgagor's right of redemption. That period typically expires six months after the judgment order of foreclosure. The court may extend or shorten that time. 12 Vt. Stat.Ann. § 4528; see *Dieffenbach v. Attorney General of Vermont,* 2 Cir. 1979, 604 F.2d 187. There is no basis for collateral estoppel in this procedure.

■ Of course, the extended period of redemption permitted under Vermont law offers substantial protection against improvident sales. This circumstance would ordinarily support an inference that the consideration was adequate, however, in this case Vermont Land had stipulated to the judgment more than six months before August 1981, when the transfer occurred under bankruptcy law. The satisfaction of Equitable's lien through the Florida transfer had not then occurred. The redemption price was the entire debt, $5.8 million. Because of these circumstances, it could not redeem the property for any sum less than $5.8 million. No inference can be drawn from the failure to do so.

The third element provides the battleground in connection with this transfer. I

**42**

find, however, that Vermont Land Co.'s only significant asset at the time of the transfer was the property transferred. At that time, it owed $877,000, $859,000 of which was owed to its parent, Cavanagh, in consideration for transfer of the property from Cavanagh to Vermont Land Co. It was clearly insolvent.

Equitable's position is that because the sum owed Cavanagh was barred by limitations and was an inter-company debt which could have been treated as a capital investment rather than a debt, it cannot be said that Vermont Land was rendered insolvent by the transfer. There is no authority for either contention and I cannot agree.

The test for insolvency in this context is the balance sheet. § 101(26)(A). By the balance sheet, Vermont Land became insolvent with this transfer. Although limitations furnish a defense, they do not automatically erase a debt. The debtor's balance sheet at the time of the transfer carried the property as an asset (though it was purchased by Cavanagh) and carried this debt to Cavanagh (for the transfer to it of the property). The entries comported with accepted accounting practices. No illegality has been suggested. A corporate debtor's solvency can always be affected by the decisions of its parent, but there is no license contained in § 548(a)(2) for this court to disregard the balance sheet because of the nature of the debt or the suspected motives of the debtor and its parent.

Equitable's motion to dismiss Vermont Land's bankruptcy is based on these same circumstances. Equitable contends it is inequitable to permit Cavanagh and Vermont Land to avoid a stipulation and an unappealed Vermont judgment by reclassifying their corporate accounts and by failing to deny the debt owed the parent. Assuming that this argument, if valid, could constitute cause under § 1112(b), the appeal to equity comes from the wrong party. If Equitable retains the Vermont property it will have satisfied its judgment twice. It will have obtained 3,930 acres in Vermont, worth between $749,000 and $1.7 million for nothing. It was this kind of inequity that § 548 was designed to prevent.

The fact that Cavanagh, as the principal creditor, will benefit in this instance, and that Cavanagh is an insider affords no statutory or equitable basis to reach a different conclusion. The renewed motion to dismiss the Vermont Land case will again be denied.

Equitable's counterclaim seeks reimbursement, in the event that either transfer is avoided, for the sums expended by it in good faith in connection with and in reliance upon the transfers. The Florida transfer is not avoided. Equitable has conceded in argument that there is no significant basis for a counterclaim with respect to the Vermont transfer. The counterclaim, therefore, will be denied.

As is required by B.R. 921(a), a separate judgment will be entered dismissing the complaint on behalf of Perdido regarding the Florida transfer and avoiding the August 1981 transfer from Vermont Land Co. to Equitable of 3,930 acres specifically described in mortgage deeds to Equitable in Morgan Land Records Book 23, pages 434–445; Charleston Land Records Book 30, pages 67–88; and Dover Land Records Book 39, pages 413–71. Equitable's counterclaim is denied. Equitable's renewed motion to dismiss the Vermont Land bankruptcy is also denied.

Each party will bear its own costs.