In re Ennis Taylor WHEELER, Debtor.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, Plaintiff & Cross Defendant,

v.

Ennis Taylor WHEELER, Defendant & Cross Plaintiff.

Bankruptcy No. 82–6432.
Adv. No. 82–1554.

United States Bankruptcy Court,
N.D. Alabama, W.D.

March 30, 1983.

Al Vreeland, Tuscaloosa, Ala., for debtor.

Robert R. Sexton, Birmingham, Ala., for Federal Nat. Mortg. Ass'n.

## MEMORANDUM OPINION

GEORGE S. WRIGHT, Bankruptcy Judge.

The issues presented by these facts are whether a valid nonjudicial prepetition foreclosure sale may be set aside pursuant to § 548(a)(2) or § 547(b) of the Bankruptcy Code of 1978.

## FINDINGS OF FACT

(1) On or about November 29, 1971, George Taylor and Essie Mae Taylor, his wife, executed a mortgage in favor of Collateral Investment Company, which was recorded in Tuscaloosa County Probate Office, Book 1042 at Page 673, on the following described real estate situated in Tuscaloosa County, Alabama, to-wit:

> All of Lot Number Eleven (11), of and according to the Plat of the Survey of Walter Smith, known as Southside Addition, to the City of Tuscaloosa, Alabama, a map or plat of which is of record in the Office of the Judge of Probate of Tuscaloosa County, Alabama, and reference to which is made in aid of and as a part of this description.

(2) This mortgage was assigned to Federal National Mortgage Association (hereinafter FNMA) by an instrument recorded in Misc. Records Book 93 at Page 519 in Tuscaloosa County Probate Office on February 3, 1972 (Collateral remained the mortgage servicing agent for FNMA).

(3) Essie Mae Taylor died intestate on April 20, 1974, and George Taylor died intestate on October 20, 1979, leaving three heirs, the debtor and two sons, Robert Lee Taylor and Louis Herbert Taylor.

(4) Robert Lee Taylor and Louis Herbert Taylor conveyed their interest in this property to the debtor by quit-claim deed on or about May 4, 1982. This deed has not been recorded.

(5) Debtor and her children have their residence and homestead in the subject property, having lived there at all times since the property was purchased in 1971 (by debtor's parents), and at all times since the death of George Taylor on October 20, 1979.

(6) On or about August 17, 1982, the mortgage indebtedness was seriously in arrears for non-payment and on August 19, 1982, the mortgage indebtedness was accelerated and the entire balance claimed due and payable. The debtor received notice of acceleration on August 21, 1982.

(7) After proper notice the mortgage was foreclosed on October 6, 1982. FNMA purchased the property at the foreclosure sale for fifteen thousand, forty-four and 79/100 ($15,044.79) Dollars, said sum representing the amount due on the mortgage and the expenses of foreclosure.

(8) On or about October 29, 1982, debtor delivered the keys to the house and property to counsel of record for Collateral Investment Company.

(9) On October 29, 1982, debtor filed a petition under Chapter 13 of the Bankruptcy Code of 1978.

(10) On December 22, 1982, FNMA filed an objection to being included in the debtor's plan and petitioned this court to approve the mortgage foreclosure sale of October 6, 1982.

(11) On December 30, 1982, debtor filed an answer to FNMA's objection to inclusion in debtor's plan and petitioned this court to set aside the foreclosure sale pursuant to § 548 and § 547 of the Bankruptcy Code.

(12) At a subsequent hearing, FNMA introduced in evidence a written appraisal report valuing the property as of December 20, 1982, at an estimated reasonable value of twenty-one thousand ($21,000.00) dollars.

(13) The debtor testified that the property had been recently appraised by a county tax appraiser at twenty-three thousand, four hundred, sixty ($23,460.00) Dollars. Debtor further testified that in her opinion the fair market value of the property was thirty thousand ($30,000.00) Dollars.

## CONCLUSIONS OF LAW

### I. FRAUDULENT CONVEYANCE

Section 548(a) provides: "The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation...."

█ It is settled in the Fifth Circuit, and also now in the Eleventh Circuit, that a nonjudicial foreclosure sale is a "transfer" under § 67(d)(2) of the Bankruptcy Act of 1898. See *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980); *Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir.1981); Snyder, "Nonjudicial Foreclosure Under Deed of Trust May Be A Fraudulent Transfer of Bankrupt's Property", 47 Mo.L.Rev. 345 (1982). The language appearing in § 548(a)(2) is indistinguishable from that appearing in § 67(d)(2) of the Act. Therefore, this court concludes that a nonjudicial foreclosure sale is a transfer under § 548 of the Bankruptcy Code of 1978. See *In re Coleman*, 21 B.R. 832, 835 (Bkrtcy.S.D.Texas 1982); *In re Thompson*, 18 B.R. 67 (Bkrtcy.E.D.Tenn. 1982); *In re Smith*, 21 B.R. 345 (Bkrtcy.M. D.Fla.1982).

█ Although § 548 speaks in terms of the trustee's power to avoid a transfer, it is clear that a chapter 13 debtor has standing to bring an avoidance action under § 548. Section 522(h) allows a debtor to avoid a transfer to the extent that the debtor could have exempted the property which is the subject of the transfer if such transfer is avoidable under § 544, 545, 547, 548, 549 or 724(a) and the trustee does not attempt to

avoid such transfer. (underlining for emphasis) See *In re Coleman,* supra, at 835. Under Alabama law, the debtor would be entitled to exempt her residence. See Ala. Code § 6–10–2 (Supp.1982). Inasmuch as the chapter 13 trustee has not attempted to avoid this transfer, the debtor is entitled to proceed with this action.

■ In an action to avoid a transfer pursuant to § 548(a)(2) the court must determine whether or not the price obtained at the foreclosure sale was less than a reasonably equivalent value in exchange for such transfer. In *Durrett v. Washington National Insurance Co.,* supra, property valued at $200,000 was sold at a foreclosure sale for $115,400, which equaled the outstanding indebtedness remaining. The court determined that this price ($115,400) amounted to only 57.7% of the market value of the property ($200,000) and this was not fair consideration. In sales involving the foreclosure of a first mortgage or lien most courts follow the procedure utilized in *Durrett* wherein the sale price or bid is compared with the market value of the property at the time of the sale. See *In re Thompson,* 18 B.R. 67 (Bkrtcy.E.D.Tenn. 1982); *In re Alsop,* 14 B.R. 982 (Bkrtcy.D. Alaska 1981), aff'd 22 B.R. 1017 (D.Alaska 1982). See also *In re Richardson,* 23 B.R. 434 at n. 11 (Bkrtcy.D.Utah 1982) (discussion of different ratios used in foreclosure of second mortgages or liens). Thus the major determination involved in this procedure is arriving at a fair market value for the property at the time of the foreclosure. In the present case an appraisal of the property was introduced setting an estimated reasonable value at $21,000.00. The property had been appraised for tax purposes at $23,460.00 and the debtor testified that the property, in her opinion, was worth $30,000.00. The court determines that the fair market value of the property at the time of foreclosure was $24,000.00. The foreclosure sale price was $15,044.79. After applying the *Durrett* ratio to these sums, the amount paid at foreclosure was approxi-

mately 62.7% of the market value of the property.

It is generally accepted in the Fifth and Eleventh Circuits that the *Durrett v. Washington National Ins. Co.,* case set an upset price equal to 70% of the market value of the property at the time of foreclosure. *In re Coleman,* 21 B.R. 832 (Bkrtcy.S.D.Texas 1982); *In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36 (Bkrtcy.S.D.Fla. 1982); *In re Smith,* 21 B.R. 345 (Bkrtcy.M. D.Fla.1982). See also *In re Thompson,* 18 B.R. 67 (Bkrtcy.E.D.Tenn.1982). But see *In re Madrid,* 21 B.R. 424 (9th Cir.Bkrtcy.App. Nev.1982); *In re Alsop,* 14 B.R. 982 (Bkrtcy. D.Alaska 1981), aff'd 22 B.R. 1017 (D.Alaska 1982); *In re Richardson,* 23 B.R. 434 at 448 (Bkrtcy.D.Utah 1982); *In re Jones,* 20 B.R. 988 at n. 23 (Bkrtcy.E.D.Penn.1982). In other words, a nonjudicial foreclosure sale which produces less than 70% of the market value of the foreclosed property is not a reasonably equivalent value in exchange for such transfer and is avoidable under § 548(a)(2). The foreclosure sale involved in the subject case brought only 62.7% of the market value of the property. Therefore, this foreclosure was not for a reasonably equivalent value in exchange for such transfer.

In addition § 548(a)(2)(A) requires that the transfer occur on or within one year of petition and (a)(2)(B)—that the debtor was insolvent at the time of such transfer or was rendered insolvent as a result of such transfer. The foreclosure sale occurred on October 6, 1982, and on October 29, 1982 (23 days later) the debtor filed her petition. Thus, the transfer occurred well within one year of petition.

■ In determining whether the debtor was insolvent or was rendered insolvent as a result of this foreclosure sale the court must turn to § 101(26) of the Code which defines insolvency. This section applies the balance sheet test for insolvency. See *In re Perdido Bay Country Club Estates, Inc.,* 23 B.R. 36 at 42 (Bkrtcy.S.D.Fla.1982); *In re Coleman,* 21 B.R. 832 at 834–835 (Bkrtcy.S.

D.Texas 1982). Simply stated, the debtor is insolvent if its debts are greater than its assets, at a fair valuation, exclusive of property exempted or fraudulently transferred. See 124 Cong.Rec. H 11,090 (Sept. 28, 1978); S17,407 (Oct. 6, 1978). In the present case, the debtor's schedule lists $26,000–plus in unsecured debt alone and further states that the debtor claims her exemptions and that the debtor has no interest in any property which exceeds in value the amounts exempted to the debtor. It is readily apparent that the debtor was insolvent at the time of the foreclosure sale. See generally *In re Coleman,* supra.

The court concludes that the $15,044.79 paid by FNMA for the subject property at the foreclosure sale was not a reasonably equivalent value for said property which was worth $24,000 at the time of such transfer, and, accordingly, the debtor may avoid the transfer pursuant to § 548(a)(2) of the Bankruptcy Code of 1978.

## II. PREFERENTIAL TRANSFER

█ Section 547(b) arms the trustee[1] with the power to avoid any transfer of the debtor's property if he can establish (1) that it was a transfer of the debtor's property, (2) to or for the benefit of a creditor, (3) for or on account of an antecedent debt, (4) made while the debtor was insolvent, (5) within 90 days before petition, and (6) which enables the creditor to receive more than he would receive under a Chapter 7 liquidation. 4 *Collier on Bankruptcy,* para. 547.01 at 547–10 (15th ed. 1982); See J. White & R. Summers, *Uniform Commercial Code,* at 1001 (2d ed. 1980).

█ In this case FNMA foreclosed pursuant to a power of sale contained in their mortgage. The foreclosure resulted in a transfer of the debtor's property. See § 547(e)(1). The foreclosure sale occurred on October 6, 1982 and the petition was filed October 29, 1982, well within the 90 day period of § 547. The only § 547 element at issue is whether the foreclosure sale enabled FNMA to receive more than they would receive under a Chapter 7 liquidation. The property was purchased by FNMA for $15,044.79, this sum representing the indebtedness owed on their mortgage plus the expenses of foreclosure. The court, however, has determined that this property has a market value of $24,000.00. It is clear that under a Chapter 7 liquidation, FNMA, as a fully secured creditor, would be entitled to receive the full value of their $15,044.79 claim upon the disposition of the secured property. However, FNMA would be entitled to no more than the amount of their claim. Yet, by reason of this foreclosure FNMA is receiving property with a market value several thousand dollars in excess of the amount of their claim. Thus, it becomes evident that the foreclosure sale did enable FNMA to receive more than they would receive in a Chapter 7 liquidation. The court determines that this foreclosure sale was a preferential transfer under § 547(b). See generally *In re Smith,* 21 B.R. 345 (Bkrtcy.M.D. Fla.1982).

This shall constitute the findings of fact and conclusions of law pursuant to Rule 752 of the Rules of Bankruptcy Procedure. A separate order will be entered consistent with this opinion.

---

1. The debtor may also bring a § 547 action. See discussion of § 522(h) under the topic

"Fraudulent Conveyance" supra.