In re Hattie BROWN, Debtor.

Hattie BROWN, Plaintiff,

v.

VANGUARD HOLDING CORP., Thomas Polombo and Faviola Felix, Defendants.

Bankruptcy No. 88 B 10626 (CB). Adv. No. (88–5726A).

United States Bankruptcy Court, S.D. New York.

July 19, 1989.

Gregory Messer, Brooklyn, N.Y., for debtor.

Phillips, Lytle, Hitchcock, Blaine & Huber, Rochester, N.Y. (Mark J. Moretti, of counsel), for Vanguard Holding Corp.

## DECISION DENYING FORECLOSURE OF A MORTGAGE AS A FRAUDULENT CONVEYANCE UNDER 11 U.S.C. § 548

CORNELIUS BLACKSHEAR, Bankruptcy Judge.

### FACTS

On August 27, 1979, plaintiff purchased property known as 830 East 223rd Street, Bronx, New York (the "Property"), as a tenant by the entirety with her husband, Alvin T. Brown. Plaintiff and her husband executed a first mortgage on the property to Vanguard Holding Corporation ("Vanguard") on August 27, 1979. Said mortgage was duly recorded in Bronx County on September 5, 1979. Thereafter, plaintiff defaulted on the mortgage on or about February 1, 1983, and Vanguard elected to accelerate its mortgage and proceed to judgment in State Court. On or about January 28, 1985, a Judgment of Foreclosure and Sale was entered awarding Vanguard the sum of $50,591.62 plus interest and costs.

On two separate occasions Vanguard was precluded from proceeding with the scheduled foreclosure sale because plaintiff filed for bankruptcy under Chapter 13 after receipt of the notice of sale. Nonetheless, each of these bankruptcy petitions were dismissed by separate orders.

Vanguard continued with the foreclosure action and, on or about February 28, 1988, plaintiff was sent and thereafter received, a Notice of Sale notifying plaintiff of the scheduled foreclosure sale date. A judicial foreclosure sale was duly conducted pursuant to New York State law on March 22, 1988. The property was sold to one of the

nine bidders at the sale at arm's length for the sum of approximately $74,000.00.

Plaintiff then filed her third Chapter 13 petition on March 22, 1988, in this Court. Thereafter, on or about April 29, 1988, plaintiff brought a motion for an Order to Show Cause in the Supreme Court for the State of New York, County of Bronx. This motion requested the State Court to (1) vacate and set aside a default judgment and allow the defendant to answer the complaint in the foreclosure action, and (2) rescind the sale of the property. This motion was denied because Brown failed to show either a reasonable excuse for her default or a meritorious defense to the foreclosure action.

After plaintiff's failed attempt to vacate the foreclosure judgment and rescind the state foreclosure sale, plaintiff commenced the adversary proceeding herein, claiming that the judicial foreclosure sale duly conducted pursuant to State law should be set aside as a fraudulent conveyance under the Bankruptcy Code (the "Code"), specifically § 548. To support her claim, plaintiff submitted an appraisal which states that the fair market value of the property on July 29, 1988, was $155,000. Plaintiff, however, has not submitted any proof as to the amount one might be expected to received of a forced or distressed sale.

## DISCUSSION

Section 548 of the Code provides in relevant part:

Fraudulent transfers and obligations

(a) The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (B)(i) was insolvent on the date that such transfer was made or such obligation was in-

curred, or became insolvent as a result of such transfer or obligation

11 U.S.C. 548(a)(2).

This section of the Code sets forth four factors which are necessary before a debtor may set aside a transfer of property: (1) the debtor had an interest in the property transferred; (2) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; (3) the transfer occurred within one year of the bankruptcy petition; (4) the transfer was for less than a reasonably equivalent value. The parties do not dispute the debtor had an interest in the property transferred and the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer.

### Transfer

■ A foreclosure sale is a transfer within the meaning of § 548(a). "Transfer" which is defined in § 101(50) of the Code provides as follows:

every mode, direct or indirect, absolute or conditional, *voluntary* or *involuntary*, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption (emphasis added).

Prior to the Bankruptcy Amendments & Federal Judgeship Act of 1984 [1] (the "1984 amendments"), some courts have argued that application of the Section 101 definition of transfer is limited under § 548(a). *Madrid v. Lawyers Title Ins. Corp.*, 725 F.2d 1197, 1202 (9th Cir.1984) ("a foreclosure sale is not a transfer by the debtor"), *aff'g on other grounds* 21 B.R. 424 (Bankr.App. 9th Cir.1982), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984); *Strauser v. Veterans Admin.*, 40 B.R. 868, 871 (Bankr.N.D.Ohio 1984) (foreclosure sale does not involve a transfer); *Alsop v. Alaska*, 14 B.R. 982, 986 (Bankr. D.Alaska 1981) (transfer did not occur during state foreclosure proceedings), *aff'd*, 22

---

**1.** Pursuant to the 1984 Amendments, subsection (a) of § 548 substituted "if the debtor voluntar-

ily or involuntarily" for "if the debtor."

B.R. 1017 (D.Alaska 1982). These cases argued that since a foreclosure sale concerns an involuntary transfer and 548(a)(2) prior to the 1984 amendments contemplated only voluntary transfers by the debtor, it would not be subject to avoidance. However, this ambiguity has been resolved by the 1984 amendments to § 548(a). Section 548(a)(2) presently states that the "trustee may avoid any transfer of an interest of the debtor in property ... if the debtor *voluntarily or involuntarily* received less than reasonably equivalent value." (emphasis added). Pursuant to the 1984 amendments involuntary transfers were added to § 548(a) and "foreclosure of the debtor's equity of redemption" was added to the list of transfers under § 101(50); thus, foreclosure sales are within the meaning of transfer under § 548(a).

Courts similarly have held foreclosure of a mortgage constitutes a transfer of the debtor's interest in property. *First Fed. Sav. & Loan of Bismarck v. Hulm (In re Hulm)*, 738 F.2d 323 (8th Cir.1984), *cert. denied*, 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). In *Hulm*, the court viewed the language of § 101 as a clear indication of the legislature's intent to include foreclosure sales in § 548(a)(2). *Id.* at 326; *Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir.1981), *cert. denied*, 454 U.S. 1164, 102 S.Ct. 1038, 71 L.Ed.2d 320 (1982); *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980).

### Time of Transfer

Although it is established that a transfer occurs during foreclosure proceedings, the time at which this transfer occurs for purposes of § 548(a)(2) remains to be determined. This is necessary because only transfers occurring within one year prior to the filing of a bankruptcy petition may be subject to avoidance under § 548(a)(2). This determination of time depends on the interpretation of § 548(d)(1). Section 548(d)(1), which was not substantively affected by the 1984 amendments, provides as follows:

> For the purposes of this section, a transfer is made when such transfer is so

perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee, but if such transfer is not so perfected before the commencement of the case, such transfer is made immediately before the date of the filing of the petition.

11 U.S.C. 548(d)(1).

Some courts have held for purposes of § 548, a transfer is made, not at the time of the foreclosure sale, but rather at the time of perfection of the mortgagee's security interest. *See Lawyers Title Ins. Corp. v. Madrid*, 21 B.R. 424 (9th Cir. BAP 1982) *aff'd on other grounds* 725 F.2d 1197, 1200–1201 (9th Cir.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66; *Alsop v. Alaska*, 14 B.R. 982, 986–988 (Bankr.D.Alaska 1981), *aff'd* 22 B.R. 1017 (D.Alaska 1982). In most cases, the perfection of the mortgagee's security interest is not within one year prior to the filing of the bankruptcy petition; thus, the foreclosure sale will not be avoided.

■ Notwithstanding these cases, the correct view is that for purposes of § 548(d)(1), the transfer occurs at the time of the foreclosure sale. *Butler v. Lomas*, 862 F.2d 1015, 19 C.B.C.2d 1373 (3rd Cir. 1988); *Bundles v. Baker*, 61 B.R. 929, 934 (Bankr.S.D.Ind.1986); *In re Upham*, 48 B.R. 695, 697 (Bankr.W.D.N.Y.1985). Additionally, § 548 is to prevent fraudulent transfers from susceptibility of attack by keeping them secret. Congress intended that § 548(d)(1) give the trustee the power to avoid secret transfers of the debtor's interest. If the language of § 548(d)(1) is interpreted in light of the purpose and policy of the Bankruptcy Code, it is evident that the transfer occurs at the foreclosure sale and does not relate back to the date of perfection. *Cf., Alsop v. Alaska*, 14 B.R. 982 (Bankr.D.Alaska 1981); *aff'd* 22 B.R. 1017 (D. Alaska 1982) (transfer relates back to date of perfection). Even in *Madrid*, the court noted that "[a]s we hold

that a transfer under 548(a) does not occur at time of foreclosure, we do not base our holding on the relation back doctrine." *Madrid v. Lawyers Title Ins. Corp.*, 725 F.2d 1197, 1199 n. 1 (9th Cir.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984).

As stated above, it is the § 101(50) transfers occurring during the foreclosure proceeding that should be scrutinized. Both the debtor's possessory and equity interests are transferred at some time during the foreclosure proceedings. Equity of redemption right exists from the time of the debtor's default to the foreclosure sale and allows the debtor to cure the default. Some states recognize a redemption right for a specified period after a foreclosure sale, New York does not. To protect his equity interest, the debtor can pay the sale price plus costs instead of curing the defaults. If the debtor's redemption right lapses, a transfer of his equity interest will occur. Transfer of possession of the debtor's property during foreclosure proceedings is effected by the execution and delivery of the property deed to the purchaser at the foreclosure sale. *See Durrett* 621 F.2d at 203–204. It is these transfers—the transfer of both the debtor's equity and possessory interests—not the transfer of the security interest in the property to the mortgagee, that is sought to be avoided under § 548(a)(2). *In re Richardson*, 23 B.R. 434, 446 (Bankr.D.Utah 1982).

■ To properly apply § 548(d)(1), this Court must look to the laws of the State of New York to determine whether the transfer is so perfected that a bona fide purchaser from the debtor who purchases the property after the debtor's equity or possessory interest has been transferred during the foreclosure proceedings can acquire an interest superior to that of the foreclosure sale purchaser. *See 4 Collier on Bankruptcy*, ¶¶ 547.48, 548.08 (15th ed. 1979). If under New York law a bona fide purchaser cannot acquire a superior interest, the § 548(d)(1) transfer date is the date during the course of the foreclosure proceedings after which such a superior interest cannot be acquired. If under New York law a bona fide purchaser can acquire an interest superior to that of the transferee, the transfer date will be "immediately before the date of the filing of the petition." 11 U.S.C. § 548(d)(1).

Under New York law, a transferee who is conveyed real property is perfected against a subsequent purchaser upon recordation of the deed. N.Y. Real Property Law, § 291 (McKinney 1989). In the instant case, plaintiff's property was purchased at a judicial foreclosure on March 22, 1988. Said conveyance was never recorded as a result of the automatic stay which was in effect upon the debtor's filing of a chapter 13 petition later that same day. Since the purchaser never perfected its interest, a bona fide purchaser could acquire a superior interest. Therefore, the transfer date is deemed "immediately before the date of the filing of the petition." 11 U.S.C. § 548(d)(1). The first requirement for setting aside a fraudulent transfer has been met. This Court must now decide whether the "debtor received less than a reasonably equivalent value in exchange for such transfer" under § 548(a)(2)(A).

*Reasonably Equivalent Value*

Once it has been determined that a transfer has occurred within one year prior to the filing of the bankruptcy petition and that the debtor is insolvent on the transfer date, the transfer can be avoided under § 548(a)(2) only if a reasonably equivalent value has not been received by the debtor. The problem in satisfying this prong of the § 548(a) test is determining whether or not less than a reasonably equivalent value was received at a foreclosure sale. Courts have taken four approaches in answering this problem.

The first approach, which the plaintiff advocates, is set forth in *Durrett v. Washington Nat'l Insurance Co.*, 621 F.2d 201 (5th Cir.1980). The *Durrett* court held that reasonably equivalent value had not been received for property that was sold for 57.7% of its fair market value at a non-judicial foreclosure sale. It based its holding on the fact that it was unable to find any

authority approving a transfer in which less than 70% of the property's fair market value on the sale date was received. 621 F.2d at 203.

The second approach, which the defendant advocates, is set forth in *Lawyers Title Ins. Corp. v. Madrid*, 21 B.R. 424, 426–427 (9th Cir. BAP 1982), *aff'd on other grounds*, 725 F.2d 1197 (9th Cir.1984), *cert. denied*, 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984). *Madrid* and its progeny[2] held that consideration received at a non-collusive and regularly conducted foreclosure sale constitutes reasonably equivalent value and that a sale duly conducted under state law withstands scrutiny as a fraudulent conveyance. The justification for the presumption is that under state law a foreclosure sale could not be set aside due to inadequacy alone. *Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 521, 419 N.Y. S.2d 56, 392 N.E.2d 1240 (1979). If the debtor shows fraud, mistake or overreaching, in addition to price inadequacy, then a court of equity has the discretion to grant relief. *Id.* Nonetheless, reasonably equivalent value should be a function of the policy underlying the Code, not state law, namely equitable distribution of the debtor's assets equally among similar creditors.

The third approach is to examine the facts and circumstances in each case to determine whether reasonably equivalent value has been received at a foreclosure sale.[3] This approach calls for a rebuttable presumption to the price obtained at the foreclosure sale. In examining the totality of the circumstances, reasonably equivalent value should not be a function of fair market value alone. *Bundles*, 856 F.2d at 824; *General Indus. v. Shea*, 79 B.R. 124 (Bankr.D.Mass.1987). It is equally important for the court to give consideration to the nature and extent of the sales effort in assessing overall commercial reasonableness. *General Indus.*, 79 B.R. at 133. Other factors to consider are whether there was a fair appraisal of the property and whether competitive bidding was encouraged. *Bundles*, 856 F.2d at 824.

The fourth and most recent approach was espoused in *Lindsay v. Beneficial Reinsurance Co.*, 98 B.R. 983 (Bankr.S.D.Cal. 1989). There, the court concluded that "the most balanced approach is one which will leave undisturbed the result of foreclosure sales that are procedurally proper, non-collusive and conducted in a commercially reasonable manner." *Id.* at 991. To achieve that result, the court should conduct the following inquiry:

First, the court should determine whether the foreclosure sale was properly conducted in accordance with state law and was non-collusive. Second, the court should examine the totality of circumstances surrounding the sale, to determine whether commercially reasonable steps were taken to achieve the best price at foreclosure. If the court is satisfied with the answer to the second inquiry, no further examination of the sale need be made. However, if the court finds that the foreclosing creditor failed to take commercially reasonable steps to achieve the best forced sale price, the court may then look to evidence of the effect of that failure on the price achieved. This third inquiry will necessarily require a consideration of evidence of the property's value, including its fair market value as determined by experts, or other evidence (such as resales).

*Id.* at 991.

*Durrett* and its progeny[4] run contrary to the basic foreclosure law rule that inade-

---

**2.** *Verna v. Dorman*, 58 B.R. 246 (Bankr.C.D.Cal. 1986); *In re Ristich*, 57 B.R. 568 (Bankr.N.D.Ill. 1986); *Strauser v. Veterans Admin.*, 40 B.R. 868 (Bankr.N.D.Ohio 1984).

**3.** *Matter of Bundles*, 856 F.2d 815 (7th Cir.1988); *General Indus. v. Shea*, 79 B.R. 124 (Bankr.D. Mass.1987); *In re Pruitt*, 72 B.R. 436 (Bankr.E. D.N.Y.1987); *Adwar v. Capgro Leasing Corp.*, 55 B.R. 111 (Bankr.E.D.N.Y.1985); *First Fed. Sav. & Loan Ass's v. Hulm*, 45 B.R. 523 (Bankr.D.N.

D.1984); *In re Richardson*, 23 B.R. at 448; *see also In re Madrid*, 21 B.R. at 428 (Volinn, J., dissenting).

**4.** *Butler v. Lomas & Nettleton Co.*, 75 B.R. 528, 531–532 (Bankr.E.D.Penn.1987), *rev'd on different grounds*, 862 F.2d 1015, 19 C.B.C.2d 1373 (3rd Cir.1988); *Federal Nat'l Mortgage Ass'n v. Wheeler*, 34 B.R. 818 (Bankr.N.D.Ala.1983); *Wickham v. United Am. Bank*, 18 B.R. 67 (Bankr.E.D.Tenn.1982).

quacy of price alone will not be grounds to set aside a foreclosure sale. These decisions therefore represent a clash between state foreclosure policy and federal bankruptcy policy. As one court noted:

> State law's sanction of exchanges in foreclosures which are not reasonably equivalent gives effect to state contract and foreclosure policy but may overlook the interests of other creditors of the debtor. The determination of reasonable equivalence should not be controlled by state law. Rather, reasonable equivalence should be determined in light of the function of § 548 in fostering an equitable distribution of the debtor's property.

*In re Richardson*, 23 B.R. 434, 447 (Bankr. D.Utah 1982).

Applying *Durrett* does not give rise to a fairer distribution of a debtor's equity, but would rather result in a windfall to those unsecured creditors who have foreseen the possibility of foreclosure and the depressed sale price typically associated with it. In rejecting the *Durrett* line of cases, courts have argued that *Durrett* would significantly chill participation at foreclosure sales to the detriment of the debtors, and would also reduce the willingness of creditors to lend, to the detriment of borrowers. *See In re Aslop*, 14 B.R. 982, 987 (Bankr.D. Alaska 1981) *aff'd* 22 B.R. 1017 (D.Alaska 1982). Furthermore, as stated by Judge Clark in his dissenting opinion in *Abramson v. Lakewood Bank & Trust Co.*, 647 F.2d 547 (5th Cir.1981), the *Durrett* rule would "cast a cloud upon mortgages and this cloud would naturally inhibit a purchaser other than the mortgagee from buying at foreclosure thereby tending to depress further the price of foreclosure sales and thus increase the potential size of the deficiency in each foreclosure." *Id.* at 550.[5]

■ Moreover, unlike *Durrett*, this case involves a judicial foreclosure sale. Judicial foreclosure sales have two principal advantages. First, it is likely to uncover and prevent defects, so as to generate a fair and adequate price. Second, court review allows judicial finality and renders them immune from collateral attack. Confirmation of a foreclosure sale by a trial court is a final order and such an order is conclusive on all matters that might have come before the court at that time. Furthermore, as provided by New York law, the debtor never appealed the foreclosure judgment after she was served with a copy of it along with written notice of its entry. *See* New York Civil Practice Laws & Rules, § 5513 (McKinney 1978). Therefore, because the debtor in this case had an opportunity to challenge the sale price at the judicial foreclosure sale, but chose not to afford herself of that opportunity, the debtor *may* fairly be bound by the statutory presumption of *Madrid. In re Perdido Bay Country Club Estates, Inc.*, 23 B.R. 36, 41 (Bankr.S.D.Fla.1982) (emphasis added). The *Perdido* court argued that the purpose of § 548(a), to permit avoidance of fraudulent transfers, is not served when the debtor relitigates in bankruptcy court an issue already resolved by another court. Further support is found in the fact that this case is a Chapter 13 proceeding where the debtor does not seek to avoid a foreclosure sale for the benefit of creditors, but rather has a personal interest to invoke protections of the state foreclosure process, but nonetheless, does not fully challenge the foreclosure sale at the state level. Therefore, it is fair to deny her a second opportunity to challenge price in this court and apply the *Madrid* presumption that the price generated by a properly conducted foreclosure sale is the "reasonably equivalent value." Additionally, extending *Durrett* to judicial foreclosure sales would also conflict with the prohibition of collateral attacks on final orders.

The flaw in following *Madrid* can be found by examining the legislative history

---

5. However, at least one court has stated, "It is beyond our scope of review to consider the policy implications of permitting the debtor to set aside the foreclosure of his home. Any change deemed desirable on policy grounds should be addressed to Congress rather than this Court. Our duty is simply to interpret the language of the statute." *Matter of Bundles*, 856 F.2d at 823 (7th Cir.1988) *citing Hulm,* 738 F.2d 323, 327 (8th Cir.1984), *cert. denied* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984).

of the 1984 amendments. The legislative history, consisting of an exchange between Senators Dole and De Concini recorded after the 1984 amendments were passed, indicates only that the amendments were not intended to resolve the so-called *"Durrett* issue." *See* 130 Cong.Rec.S. 13771–S.13772 (No. 131, Pt. II, Oct. 5, 1984). Furthermore, one of the proposed amendments dealt specifically with the *Durrett–Madrid* debate and adopted the *Madrid* irrebuttable presumption rule.[6] This amendment, however, was not included in the Bill that ultimately became law. Accordingly, the most reasonable interpretation of the legislative history is that Congress did not legislate an irrebuttable presumption in the case of mortgage foreclosure sales. *Matter of Bundles*, 856 F.2d 815, 821 (7th Cir.1988).

■ Implying an irrebuttable presumption would be inconsistent with the language of the statute. Such a reading, in effect, creates an exception to the trustee's avoiding powers under § 548(a)(2)(A)—an exception not otherwise found in the statute—for property sold at a foreclosure sale. *See In re Madrid*, 21 B.R. at 423 (Volinn, J. dissenting) ("By concluding that a regularly conducted sale in the absence of collusion satisfies the 'reasonably equivalent value' test, the majority has excised vital language from § 548 in order to create an exception to the statute where a forced sale of the debtor's property is involved"). Moreover, an irrebuttable presumption has the effect of reading good faith into § 548(a)(2)(A); as long as the sale is conducted in good faith and in accordance with state law, the sale price is conclusively presumed to be a reasonably equivalent value. *Matter of Bundles*, 856 F.2d 815, 823 (7th Cir.1988).

This Court is in accord with Judge Maluger's decision in the *Lindsay* case. As that court stated, "the Court will examine the price obtained at a foreclosure sale only when we are persuaded that the foreclosing creditor failed to take commercially

reasonable efforts to achieve the best price." *Id.* at 991. Compliance with state court foreclosure standards should not be elevated above all other factors. However, the price paid at a foreclosure sale that is procedurally proper, non-collusive and conducted in a commercially reasonable manner shall be given a strong presumption of adequacy. *Accord, In re Madrid*, 21 B.R. at 428 (Volinn, J. dissenting).

■ In the case at bar, the parties stipulated to the fact that the foreclosure sale was duly conducted pursuant to state law, the property was sold to an arm's length purchaser and there were nine bidders at the sale.

In applying the facts of this case to the standards set forth in *Lindsay*, the parties do not dispute the fact that the foreclosure sale was properly conducted in accordance with state law and was non-collusive.

Our next inquiry focuses on examining the totality of the circumstances to determine whether commercially reasonable steps were taken to achieve the best price at foreclosure. In considering the totality of the circumstances, courts look to the nature and extent of the sales effort, whether there was a fair appraisal of the property and whether competitive bidding was encouraged.

Turning first to the sales effort, plaintiff has stipulated to the fact she received proper Notice of Sale on or about February 28, 1988. This Notice of Sale apprised plaintiff of the March 22, 1988 foreclosure date. Although it was not brought to the attention of this Court what other sale efforts were made, it is quite evident that the sale was widely advertised since there were nine bidders at the sale. Unquestionably, there was competitive bidding in addition to a thorough sales effort.

■ Addressing the appraisal aspect of the sale is a bit more troublesome. The burden of proof is on the plaintiff to show

---

**6.** The proposed amendment to § 548 stated: "granting an irrebuttable presumption of reasonably equivalent value to any mortgage or third-party purchaser who purchases mortgaged property of a regularly conducted non-

collusive foreclosure sale for a price equal to the full amount of the mortgage debt."
130 Cong.Rec. S.13771–S.13772 (No. 131, Pt. II, Oct. 5, 1984).

that the consideration paid at a regularly conducted foreclosure sale is inadequate. *Id.* The only evidence offered in this case is an appraisal of the property as of July 29, 1988, whereas the sale took place on March 22, 1988. Furthermore, plaintiff has not proffered any evidence as to what a foreclosure sale or distressed sale price might bring. It is these sales—foreclosure sales and distressed sales—which provide a much more accurate indication of the value of property being sold at a foreclosure sale. Plaintiff, by not introducing any evidence as to what similar homes in her neighborhood are worth at a foreclosure or distressed sale has not met her burden of proof.

After examining the totality of the circumstances surrouding the sale, this Court is satisfied the sale was properly conducted in accordance with state law, non-collusive and commercially reasonable. Although a low percentage of *fair market value* was received after employing sales efforts which were commercially reasonable, this Court will leave the sale undisturbed.

### CONCLUSION

In addition to concluding the foreclosure sale was properly conducted in accordance with state law and non-collusive, this Court, after examining the totality of the circumstances, is persuaded the defendants took commercially reasonable efforts to achieve the best price. Thus, we do not have to examine the price obtained at the foreclosure sale. Therefore, the foreclosure price received is deemed to provide a reasonable equivalent value within the meaning of § 548(a)(2)(A).

Accordingly, the plaintiff's complaint is dismissed.

Settle Order consistent with this opinion.