In re TIMBER LINE, LTD., Debtor.

Dorothy EISENBERG, Trustee, Estate of Timber Line, Ltd., Plaintiff,

v.

EAST CAROLINA SHIP AGENCIES, et al, Defendants.

Bankruptcy No. 81 B 10177 (PBA).
Adv. No. 81–5818–A.

United States Bankruptcy Court,
S.D. New York.

April 9, 1986.

Shaw, Goldman, Licitra, Levine & Weinberg, P.C., Garden City, N.Y., for trustee; Karen Carter Caso, of counsel.

Ward & Smith, P.A., New Bern, N.C., for East Carolina Ship Agencies, Inc.; Michael P. Flanagan, of counsel.

## DECISION AND ORDER DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT

PRUDENCE B. ABRAM, Bankruptcy Judge:

Timber Line, Ltd. ("Timber Line"), a company which had been engaged in the shipping business, filed its Chapter 7 petition on January 27, 1981. The schedules accompanying the petition list unsecured claims totalling $1,149,443.06. Assets are stated to be $398,559.13, consisting principally of freight receivables. Dorothy Eisenberg, the trustee of Timber Line (the "Trustee"), commenced this adversary proceeding on December 7, 1981 seeking to recover alleged preferential transfers to East Carolina Ship Agencies ("East Carolina") in the amount of $73,819.23.[1]

East Carolina filed an answer in which it admits receipt during the 90–day preference period of checks payable to it in the total amount of $73,819.23. However, East Carolina states that only $7,883.21 of the amount transferred was received on account of services rendered by East Carolina and that the balance in excess of that amount was paid to East Carolina for transmittal to other entities which provided goods and services (the "Vendors") to Timber Line's ships. East Carolina's first and second affirmative defenses are that East

---

1. The Debtor's schedules list East Carolina as a creditor with a contingent claim of $95,000.

Carolina did not receive a preference for the amount over $7,883.24 because it was not a creditor in excess of that amount and that all of the funds except that amount were held by East Carolina as trustee for the Vendors. As a third affirmative defense, East Carolina alleges that a maritime lien existed for the full amount transferred and that therefore the payments were in payment of a secured debt and not preferential. East Carolina also moved to dismiss the complaint for failure to join the Vendors as parties. By order of the court dated February 11, 1982, the Trustee was directed to join the Vendors as necessary parties, which she did.

The matter presently before the court is East Carolina's motion for summary judgment and the Trustee's cross-motion for summary judgment. Extensive discovery has been had. East Carolina urges that it is entitled to summary judgment because it had a maritime lien or, alternatively, that it is entitled to partial summary judgment as to the amounts over $7,883.24 because it did not receive those amounts on its own account. The Trustee's cross-motion urges that the entire payment was preferential because East Carolina was a creditor and that no maritime lien exists. The Vendors are not parties to these cross-motions for summary judgment.

For the reasons which follow, the court finds that East Carolina was not a creditor of Timber Line as to amounts received over $7,883.24 and therefore did not receive a preferential transfer as to that excess. As to the $7,883.24, East Carolina received a preferential transfer unless it can demonstrate the existence of a maritime lien at the time of payment. The present record is insufficient to allow a determination of whether a valid maritime lien existed at the time of payment. It is appropriate to defer final determination of the maritime lien issue, particularly in light of the importance of the issue to the Vendors.

East Carolina was local port agent for Timber Line in the Wilmington, North Carolina port. As local agent, East Carolina would arrange for a company to do the stevedoring, line handling, docking pilots, customs and any service the vessel needed in port, including making cash advances to the master, if necessary. East Carolina charged a set fee per voyage for acting as agent and also set fees for items such as postage. The agreement between Timber Line and East Carolina was oral in nature. Within two or three weeks after a Timber Line vessel sailed from the port, East Carolina would submit a disbursement account to Timber Line. The disbursement account would include the set fees, any advances and the statements of account by all third-party vendors who rendered services to the Timber Line vessel. Within one or two weeks of receipt by Timber Line of the funds to satisfy the disbursement account, East Carolina would pay all third-party vendors. The only third-party vendors which would be paid by East Carolina prior to receipt of funds from Timber Line would be the U.S. Department of Customs and any trucking company which required earlier payment pursuant to ICC regulation.

The $73,819.23 in issue was received by East Carolina in the form of two checks: one a Timber Line check dated November 10, 1980 in the amount of $24,268.65 and the other a Timber Line check dated December 5, 1980 in the amount of $49,550.33. These two checks paid 13 separate invoices, along with certain minor freight adjustments, that had previously been submitted to Timber Line by East Carolina. After receipt of these two checks East Carolina paid the Vendors all but $7,883.24 of the amount received.

■ A port agent may be either a general or a special agent. If a general agent, the port agent will arrange on behalf of the absent owner [2] for all services the owner's vessel or vessels require while in a particu-

---

**2.** As this court is using the term owner, it includes a time charterer. Timber Line was only the time charterer of the vessels covered by the disbursements accounts. Since no interests in

vessels are listed on its schedules, it would appear all of Timber Line's time charters had terminated before the petition was filed.

lar port. A special agent is one charged with responsibility for either a limited range of services or for a single vessel calling. The owner advises the port agent of the anticipated arrival of the vessel and the services required. The port agent and the owner may consult each other over the various issues which arise during the vessel's stay in port. It is clear that East Carolina was Timber Line's agent and contracted with the Vendors on Timber Line's behalf. The Trustee has offered no credible evidence to the contrary, relying on conclusory allegations that Timber Line had no communication, agreement or privity of contract with the Vendors.[3] However, the mere finding that an agency relationship existed is not conclusively dispositive of the issues raised.

A port agent may request the owner to place it in funds for the anticipated vessel disbursements prior to the arrival of the vessel. It appears that East Carolina did not request a cash advance for anticipated disbursements on the thirteen voyages in issue. East Carolina billed Timber Line for the disbursements after a vessel departed and did not make payments to Vendors, with certain exceptions, until after receipt of payment of the disbursement accounting from Timber Line. Of great relevance to this preference proceeding is this practice of East Carolina relative to payment of the Vendors with whom it contracted on Timber Line's behalf.

■■■ A preference cannot exist in the absence of an extension of credit. A preferential transfer is by definition a payment on account of an antecedent debt. See Bankruptcy Code § 547(b).[4] The general rule is that a third party who knows that an agent is acting for a disclosed principal in executing a contract cannot hold the agent liable. See 3 N.Y.Jur.2d, Agency §§ 275–278. The agent can, of course, add its own contract to that of the principal in dealing with third parties. East Carolina's delay in making payment to the Vendors is evidence that it was not liable to the Vendors and that the Vendors were looking to Timber Line for payment.[5] In a position of no advances by the agent or any prior open debts to the agent, the rendition of a disbursement accounting is not evidence of any indebtedness of the owner to the port agent. Rather, it evidences the indebtedness of the owner to the third party vendors. The owner could, should it choose, pay those third parties directly and not through the port agent. The owner does not make such a direct payment because it simplifies the owner's accounting procedures to deal only with the agent and because it gives the owner greater control over billing accuracy because of the agent's knowledge of the actual services performed. It is apparent that East Carolina was not a creditor of Timber Line for the full amount of the disbursements account. Conversely, it is evident that East Carolina made an extension of credit to Timber Line to the extent East Carolina paid a Vendor prior to receipt of funds from Timber Line.

Certainly the port agent is acting as a disbursing agent for the owner in making payment to the third party vendors upon receipt of funds from the owner. The port agent may also be acting as a collection agent for the vendors. Although East Carolina's papers are suggestive of this dual role, this issue has no impact on the

---

3. The Trustee has apparently overlooked the effect of custom and usage in a particular business on the authority of an agent. "In other words, an agent employed to do an act is deemed authorized to do it in the manner in which the business entrusted to him is usually done." 2 N.Y.Jur.2d, Agency § 83 at 530. It is the existence of custom and usage in the shipping business which allowed East Carolina and Timber Line to operate without a comprehensive written agreement in matters of significant commercial importance.

4. The amendments made to Code § 547 by the Bankruptcy Amendments and Federal Judgeship Act are not applicable to this case.

5. Whether East Carolina's payment of certain of the Vendors prior to receipt of payment by Timber Line is evidence of an assumption of the obligation by East Carolina or merely an extension of credit to Timber Line need not be decided on the present motions.

present motions. This court need not rule on East Carolina's second affirmative defense that it received the payments in trust for the Vendors. Compare *In re Black & Geddes, Inc. (Dampskibsselskabet AF 1912 Aktieselskab, et al. v. Debtor)*, 35 B.R. 830 (Bankr.S.D.N.Y.1984) (Freight forwarded not required to segregate payments received from shipper for carrier and carrier could not therefore impose constructive trust on funds).

■ Any Vendors paid by East Carolina immediately, or essentially contemporaneously with the rendition of services, would appear to be free from a preference attack. Either they received no monies of the Debtor, having been paid with East Carolina's funds, or they received funds of the Debtor in East Carolina's hands. To the extent the Vendors were not paid until after East Carolina received the funds from Timber Line, the Vendors appear to be vulnerable to a preference attack but East Carolina is not since East Carolina was not a creditor of Timber Line for those amounts.[6]

■ As a final matter, the court will consider the maritime lien claim defense asserted by East Carolina. East Carolina asserts that the payments to it were not preferential because it had a maritime lien on the various vessels for which goods and services were provided and the collection of the sums in question was a satisfaction of the maritime lien.[7] As a general matter, this court accepts the proposition that payment of a claim to the extent of the value of any security held does not constitute a preference. See 4 Collier on Bankruptcy 15th Ed. (1985), ¶ 547.21. A maritime lien existed on the vessel for the services in issue. See 46 U.S.C. § 971 and *Atlantic & Gulf Stevedores, Inc. v. M/V Grand Loyalty*, 608 F.2d 197 (5th Cir.1979). A maritime lien on a vessel can extend to the freights. See *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188 (9th Cir.1962) and *Galban Lobo Trading Co. v. The Diponegaro*, 103 F.Supp. 452 (S.D.N.Y.1951). See also *Gulf Oil Trading Co. v. Creole Supply*, 596 F.2d 515 (2d Cir.1979). The validity of the maritime lien claim may depend on when Timber Line received the freight payments in relation to when Timber Line paid East Carolina.[8] If Timber Line paid East Carolina *before* receiving some or all of the freights, then the payment would seem to be payment in satisfaction and release of a lien, at least to the extent of the amount of freights as yet not paid, and no preference would result. However, if Timber Line paid East Carolina *after* the freights were received by Timber Line, it would be necessary to determine whether the payment of the freights to Timber Line effectively terminated the maritime lien. See *Galban Lobo Trading Co. v. The Diponegaro, supra*, 103 F.Supp. at 454 (Prepaid freights not subject to maritime lien; at some point freights become personal property of owner not subject to a maritime lien). If the maritime lien existed after Timber Line's receipt even if the freights were commingled with Timber Line's other funds upon receipt, constructive trust issues would also arise. See *In re Black & Geddes, supra*. In any event, a maritime lien on freights is limited to a lien on freight for services for the particular voyage to which the services relate. See *Schirmer Steve-*

---

6. This discussion explains the conundrum seen by the Trustee in which certain Vendors were paid contemporaneously, and thus not preferentially, yet East Carolina received a transfer on account of that Vendor that would be preferential, assuming the maritime lien defense fails. In prepaying the Vendor, East Carolina extended credit to Timber Line and left itself alone vulnerable to a preference challenge. The prepaid Vendors' exposure is limited to the possibility that East Carolina may be able to recover against them on some theory such as failure of consideration or conditional payment.

7. There may be a certain inconsistency in this argument since if East Carolina was owed nothing it could not have an enforceable lien. However, if East Carolina is the collection agent of the Vendors it presumably could assert a maritime lien on their behalf.

8. Although it is unnecessary for East Carolina or the Vendors to trace the freights into the Trustee's hands, it would be necessary for them to show that Timber Line had actually been able to collect the freights.

*doring Co., Ltd. v. Seaboard Stevedoring Corp., supra,* 306 F.2d at 192. A maritime lien also obligates the interest of the owner of the vessel. However, release of a claim, or security interest, in the assets of a third party is not relevant to the question of whether a preference was received from the Debtor.[9] The factual issues preclude present resolution of the maritime lien claim at this time.

The motion of East Carolina is granted to the extent of sustaining its first affirmative defense and limiting preference recover against East Carolina to a maximum of $7,883.24. The motion of the Trustee for judgment in her favor is denied.

It is so ordered.

---

9. Of course, the time charter no doubt imposed an obligation on the time charterer to indemnify the owner. However, the existence of that obligation, also an unsecured one, would likewise be insufficient to defeat a preference claim against a third party.