In re PARK NORTH PARTNERS, LTD., a Florida Limited Partnership f/k/a Florida Realty Partners, XXV, Debtor.

PARK NORTH PARTNERS, LTD., Appellant,

v.

PARK NORTH ASSOCIATES, Michel Brasseur, and Duffle Corp., Appellees.

Civ. A. No. C87–1028A.

Bankruptcy No. A85–03974–ADK.

Adv. No. A–85–0828A.

United States District Court, N.D. Georgia, Atlanta Division.

Dec. 11, 1987.

**552**

Lewis E. Hassett, Aiken & Ward, Atlanta, Ga., for appellant.

Benjamin Cade Abney, Abney Tate & Mallernee, Atlanta, Ga., for appellees.

## ORDER

ROBERT H. HALL, District Judge.

This is an appeal from an order of the bankruptcy court in which the court found, among other things, that: (1) the subject foreclosure sale did not constitute a voidable preference within the meaning of 11 U.S.C. § 547(b); (2) the foreclosure sale was not for less than reasonably equivalent value and thus did not constitute a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(2); (3) no surplus proceeds resulted from the foreclosure sale; and (4) defendant did not chill the bidding at the foreclosure sale. *In the Matter of Park North Partners, Ltd.*, 72 B.R. 79 (N.D.Ga. 1987) (Kahn, J.). For the reasons stated below, the court VACATES the bankruptcy court's order and REMANDS the action for further findings.

### FACTS [1]

The appellant ("plaintiff" or "debtor") is a Florida limited partnership. The appellee, Park North Associates, is a Georgia limited partnership whose general partners at the time of the foreclosure at issue were appellees, Michel Brasseur and Duffle Corp. (all appellees will be collectively referred to as "defendant"). Plaintiff is the debtor in the pending chapter 11 action and the plaintiff in this adversary proceeding. Plaintiff's claims in this adversary action relate to the foreclosure of a promissory note and deed to secure debt made by the plaintiff in favor of the defendant.

On December 20, 1980, the plaintiff purchased from the defendant certain real property located in Fulton County, Georgia, known as the Park North Office Building (hereinafter "the Property"). (Stipulation No. 1).[2] Part of the purchase price was paid by the plaintiff's execution and delivery of an All Inclusive Purchase Money Promissory Note and an All Inclusive Purchase Money Deed to Secure Debt and Security Agreement (hereinafter collectively "the Wrap Note"). (Stipulation No. 2). Included within the outstanding balances of the Wrap Note were the balances of other promissory notes secured by superior liens on the Property (hereinafter collectively "the Underlying Debt"). (Stipulation No. 5).

In April, 1985, the defendant declared a default in the Wrap Note and proceeded to advertise the Property for a foreclosure sale. (Stipulation No. 6). The foreclosure advertisement appeared in the Fulton County Daily Report on April 12, 19 and 26, 1985, and on May 3, 1985. (Stipulation No. 7). The advertisement described the Wrap Note and then stated that the Wrap Note would be foreclosed "subject to" the Underlying Debt. (Stipulation No. 8).

The foreclosure sale was held on May 7, 1985. (Stipulation No. 9). At the foreclosure sale, the defendant's attorney, James Beach (hereinafter "J. Beach"), read the advertisement, including the specification that the Property was being sold subject to the Underlying Debt. J. Beach then opened the bidding, and Karl Wiley (hereinafter "K. Wiley") announced a bid of $857,-209.83 on behalf of the defendant. (Tr. 62). The bid was submitted as an unconditional

---

1. In this summary of the facts the court sets forth the statement of the case and statement of the facts set forth in appellant's brief. The appellee, in its response brief, adopted the appellant's statement of the facts and thus, these facts are not in dispute.

2. Most of these facts were stipulated by the parties prior to the trial in the bankruptcy court. The stipulations are attached to the consolidated pretrial order which was adopted as an order of the bankruptcy court.

bid, with no further explanation. (Tr. 62–63). Persons who may have been potential bidders were present during the sale. (Tr. 48–49, 65–66).

The defendant accepted its own bid and executed a Deed Under Power which was recorded on May 23, 1985. (Stipulation No. 10). The Deed Under Power states that the consideration was $857,209.83, cash, and that the sale was made "subject to" the Underlying Debt. (Stipulation No. 10). The defendant also filed a State of Georgia Real Estate Transfer Tax Declaration in connection with the sale which stated that the "net taxable value" of the conveyance was $857,209.83. (Trial Exhibit No. 15). The transfer tax declaration specified the tax due to be $857.30, and the Deed Under Power shows that transfer tax in that amount was actually paid. (Trial Exhibits No. 14, 15).

On the date of the foreclosure sale, the total outstanding balance of the Wrap Note, including the Underlying Debt, was $857,209.83. (Tr. 4–5). Also as of that date, the total outstanding balance of the Underlying Debt totalled $338,069.98. (Stipulation No. 11). The parties have stipulated that on the date of the foreclosure, the Property had a fair market value of $1,050,000.00. (Tr. 4–5). The parties have also stipulated that the Plaintiff was insolvent at the time of the foreclosure sale. (Tr. 4–5).

The defendant has not tendered to the plaintiff any funds as "surplus" from the foreclosure sale. (Stipulation No. 12). Additionally, the Underlying Debt was not satisfied with the proceeds from the foreclosure sale and remains outstanding. (Tr. 67–68).

## DISCUSSION

Plaintiff argued before the bankruptcy court, and reargues on appeal, that the foreclosure sale created a surplus in the amount of the underlying debt which should inure to the debtor's estate. This is so, plaintiff argues, because defendants submitted an "unconditional" bid for a note which was advertised as "subject to" underlying debt.

In the alternative, plaintiff contends that if the court does not agree that a surplus was generated by the sale, then the "unconditional" bid of $857,209.83 chilled bidding because third party potential bidders, knowing the sale was made "subject to" underlying debt, would not have bid as high an amount. Plaintiff reasons that a potential bidder would have construed defendant's "unconditional" bid as *not* including the underlying debt and, adding that amount to the bid amount, would have calculated that the amount of debt purchased would exceed the fair market value of the property (as well as the value of the equity of redemption). Therefore, plaintiff argues, there was a lack of competitive bidding at the foreclosure sale. Plaintiff also submits that there was an irregularity in the sale because, if defendant's unconditional bid indeed included the underlying debt, then this bid must be construed to equal $519,139.85 (the difference between the bid price and the amount of underlying debt) which is substantially less than the value of the equity of redemption.

Plaintiff's third argument on appeal and before the bankruptcy court is that the bid at the foreclosure sale did not represent "reasonably equivalent value" within the meaning of 11 U.S.C. § 548(a), the fraudulent transfer section of the Bankruptcy Code. Plaintiff seeks to have this court declare that the bankruptcy court erred in applying an inflexible rule that any percentage above 70% will constitute reasonably equivalent value whereas any percentage below that will mandate the setting aside of the foreclosure sale.

Finally, plaintiff argues that the foreclosure sale should be set aside pursuant to 11 U.S.C. § 547(b) which provides that a transfer of the debtor's property may be avoided by the trustee if the property is transferred: (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before the transfer was made; (3) while the debtor was insolvent; (4) on or within 90 days from the date of the debtor's filing its bankruptcy petition; and (5) so as to enable the creditor to receive more than the creditor would receive if the case were a chapter

7 case. The parties agree that the first four criteria of section 547(b) were met in the foreclosure sale. The bankruptcy court found that the plaintiff failed to prove the fifth element, however, and therefore did not set the sale aside as a preference under section 547.

To support its conclusion that plaintiff failed to prove the fifth criterion—that defendant received more than it would have in a chapter 7 case—the bankruptcy court cited *In the Matter of Formed Tubes, Inc.*, 41 B.R. 819 (E.D.Mich.1984) and *In re Timber Line, Ltd.*, 59 B.R. 728 (S.D.N.Y.1986). This court has reviewed each of those authorities and finds that the holdings of those courts are inapposite to the instant action. This court can only conclude that the bankruptcy court cited those cases for the dictum in each that, as a general matter, payment to a secured creditor, to the extent of the value of any security held, does not constitute a preference. In neither of the cases cited by the bankruptcy court did the facts parallel the facts of the instant action. In *Formed Tubes*, the court held that the payment made by the debtor was made to an *un*secured creditor and in *Timber Line*, the court found that the entity to which the debtor transferred funds was not a creditor at all.

In the instant action defendant was a secured creditor of plaintiff. Therefore a payment by plaintiff to defendant to the extent of the value of the claim would not constitute a preference. The bankruptcy court apparently concluded that the transfer of the Wrap Note at the foreclosure sale was tantamount to the debtor paying a claim to a secured creditor. By selling the wrap note, however, it appears that plaintiff transferred ownership of property valued at $1,050,000.00 at the time of the sale. Although the defendant submits, and the bankruptcy court apparently agreed, that all that was sold was the Wrap Note, on which the amount due equalled the amount bid, the bankruptcy court noted in its findings of facts that the defendant "advertised the *Property* for a foreclosure sale." *Park North Partners, supra*, 72 B.R. at 80 (emphasis supplied).

This court believes that the case of *In re Wheeler*, 34 B.R. 818 (N.D.Ala.1983), is more applicable to the instant action than the cases cited by the bankruptcy court. The facts of *Wheeler* are similar to those of the case at bar: the debtor had executed a mortgage on certain real estate which was assigned to Federal National Mortgage Association (FNMA), the defendant in the action. Because the mortgage indebtedness was in arrears, the mortgage was foreclosed. FNMA purchased the real estate at the foreclosure sale for an amount which represented the exact amount due on the mortgage (plus expenses of the foreclosure). The price paid by FNMA at the foreclosure sale of the mortgage was substantially less than the fair market value of the property.

The *Wheeler* court concluded that the foreclosure sale constituted a preferential transfer under § 547(b) because FNMA, a secured creditor, received more than it would have in a Chapter 7 case. The court reasoned that FNMA purchased the property for the exact amount owed on the mortgage. This same amount would be *all* that FNMA would be entitled to receive in a Chapter 7 action (because it represented the full value of its claim upon the disposition of the secured property). The court found however, that "by reason of this foreclosure FNMA [received] property with a market value several thousand dollars in excess of the amount of their claim." Thus the foreclosure sale enabled FNMA to receive more than it would have in a Chapter 7 liquidation. *Id.* at 822. *See also In the Matter of Fountain*, 32 B.R. 965, 967–68 (W.D.Mo.1983) (set aside a prebankruptcy foreclosure where value of property exceeded amount bid at sale).

If, in the instant action, the purchase of the Wrap Note by defendant resulted in the transfer of the property to defendant, then the bankruptcy court should have determined the market value of the property at the time plaintiff filed its bankruptcy petition. Although defendant was a secured creditor of plaintiff, in a Chapter 7 liquidation it would not have received more than the value of its claim. If, by purchasing the Wrap Note for the exact amount

owed on the Note, defendant received property valued, at the time plaintiff filed its bankruptcy petition, in excess of the amount bid, the foreclosure sale must be set aside as a preference under 11 U.S.C. § 547.

It is not clear from the bankruptcy court's order or the evidence in the case that the foreclosure sale of the Wrap Note passed title in the property to defendant.[3] Moreover, the parties did not submit evidence of the fair market value of the property at the time plaintiff filed its bankruptcy petition. If the evidence shows, however, that, as a result of its purchase of the Wrap Note at the foreclosure sale, defendant received property worth more than it would have received in a chapter 7 liquidation, then the foreclosure sale must be set aside as a preference under § 547(b).

## CONCLUSION

The transaction at issue in this case did not involve a payment of a claim by a debtor to a secured creditor and therefore, the cases cited by the bankruptcy court with regard to Count III of plaintiff's complaint are inapplicable. The court VACATES the bankruptcy order and REMANDS the action for a determination of whether the foreclosure sale enabled defendant to receive more than it would receive in a chapter 7 case (i.e. property with a fair market value in excess of defendant's secured claim). The court declines to address plaintiff's other enumerations of alleged error by the bankruptcy court.

---

**3.** The evidence shows, however, that approximately a month after the foreclosure sale, defendant sold the property to a third party, Kelly, Ltd., for $1,100,000.00.