In re Cynthia K. ANDREWS, Debtor.

Norwest Bank Minnesota, N.A., as Trustee of Salomon Brothers Mortgage Securities VII, Inc., Mortgage Loan Trust 1996–LB2 Under Pooling and Servicing Agreement Dated as of October 1, 1996, Movant,

v.

Cynthia K. Andrews and Charles J. Dehart, III, Trustee, Respondents.

Cynthia K. Andrews, Plaintiff,

v.

Norwest Bank Minnesota, N.A., as Trustee of Salomon Brothers Mortgage Securities VII, Inc., Mortgage Loan Trust 1996–LB2 Under Pooling and Servicing Agreement Dated as of October 1, 1996, Defendant.

Bankruptcy No. 5–00–00353.
Adversary No. 5–00–00074A.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes-Barre Division.

April 13, 2001.

Donald Faulkner, Lock Haven, PA, for Debtor.

Stuart Winneg, Law Offices of Mark J. Udren & Associates, Cherry Hill, NJ, for Norwest Bank.

## *OPINION*[1]

JOHN J. THOMAS, Bankruptcy Judge.

The above-captioned adversary was initiated by Cynthia K. Andrews, hereinafter "Plaintiff," seeking to avoid as a preferential transfer under 11 U.S.C. § 547(b), a prepetition Sheriff's sale of Plaintiff's real property purchased by the "Defendant," Norwest Bank Minnesota. Prior to the filing of this adversary, the Defendant filed a Motion for Relief from the Automatic Stay requesting permission to institute an action in ejectment and to enforce all rights it has under state law to possession of the premises occupied by the Plaintiff. By Order dated June 22, 2000, both matters were consolidated for joint adjudication. Following the submission of briefs and oral argument, the Court took these matters under advisement. The parties agreed the following stipulated facts would control the Court's resolution of both matters.

1. Debtor, Cynthia K. Andrews, filed the instant Chapter 13 bankruptcy on February 4, 2000.

2. The property which forms the subject of this action is situate at 74 Creek Road, a/k/a 17 Creek Road, Mill Hall, PA 17751 ("the premises").

3. Norwest (or its predecessor in interest) was the holder of a first mortgage on the premises.

4. Judgment in mortgage foreclosure was entered against Debtor (the mortgagor on the Norwest mortgage) and in favor of Norwest.

5. On February 2, 2000, two days prior to the filing of the instant bankruptcy,

the premises were sold at Sheriff's sale, in Clinton County, Pennsylvania.

6. Debtor was given prior written notice of the Sheriff's sale, and knew of the date of the Sheriff's sale.

7. As of the date of the Sheriff's sale, the debt owed by Debtor to Norwest was $77,822.50, exclusive of Sheriff's costs.

8. The Sheriff's costs for the sale were $5,047.65.

9. Other than the debt to Norwest, there are several other judgment and/or municipal liens on the premises.

10. A Sheriff's deed has not yet been recorded.

11. Debtor remains in possession of the premises.

12. The property which forms the subject of this action situate at 74 Creek Road a/k/a 17 Creek Road, Mill Hall, PA 17751, has a fair market value of $93,500.00.

Stipulations of Facts filed 7/7/2000 (Doc. # 6A) and 7/24/2000 (Doc. # 9A) in adversary 5–00–00074A.

Before getting into the substance of the request to avoid the Sheriff's sale as a preferential transfer under § 547 and the concurrent motion to lift the stay, the Court will address the argument advanced by the Defendant that the Plaintiff lacks standing to bring the action to avoid preferential transfer.

■ Both parties rely on the language contained in 11 U.S.C. § 522(h) in support of their respective positions concerning the Plaintiff's standing. Section 522(h) reads as follows:

**§ 522. Exemptions.**

(h) The debtor may avoid a transfer of property of the debtor or recover a set-

---

**1.** Drafted with the assistance of Richard P. Rogers, Law Clerk.

off to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

To exercise the avoidance powers of § 547, the debtor must satisfy the following requirements:

(1) the trustee must not have sought and must not seek to avoid the transfer;

(2) the trustee must have the ability to avoid the transfer;

(3) the transfer debtor seeks to avoid must be involuntary and the property must not have been concealed; and

(4) the property debtor seeks to recover must be exemptible.

*In re Romano,* 175 B.R. 585, 596 (Bankr. W.D.Pa.1994); *In re Wimbish,* 95 B.R. 379, 386 (Bankr.W.D.Pa.1989).

The Defendant has conceded that requirements 1, 2, and 3 above have been met by the facts of this case. The Defendant argues that the fourth requirement cannot be met because an exemption cannot be calculated in the Plaintiff's favor in that the Plaintiff does not have any equity in the property, therefore not allowing an exemption in the property under § 522(b)(1).

The record gives scant support for the Defendant's position. The Stipulation of Facts does not address the issue of equity. While it recites that, in addition to the judgment in mortgage foreclosure, there are other liens and judgments against the real estate, no evidence is given in the Stipulation of Facts as to the extent of the liens on the property. Under 11 U.S.C. § 362(g)(1), the party requesting relief of the automatic stay has the burden of proof on the issue of equity in property. Defendant has failed to meet this burden of proof.

At oral argument on this matter, the Plaintiff argued that she took an exemption in any equity that exists in the property should she be declared the owner of the property. Additionally, the Defendant conceded at oral argument that the Plaintiff had a legal interest in the real estate even though it was subject to a prepetition Sheriff's sale. An estate in bankruptcy consists of all interest in property, both legal and equitable, which are possessed by the debtor on the date of the filing of the petition including any interest recovered through transfer and lien avoidance provisions. *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991). Therefore, if a debtor holds only bare legal title to her house, even if the house is subject to a purchase-money mortgage for its full value, then the legal interest passes to the estate. *Id.* at 308, 111 S.Ct. 1833. Based upon the foregoing and in addition to my determination that the Plaintiff was somewhat inartful in her claim of an exemption of her legal interest and any equity which may have existed at the time of the filing of this bankruptcy, I find the Plaintiff has standing to litigate the instant complaint under 11 U.S.C. § 547.

The Court will now address the merits of the parties' arguments under 11 U.S.C. § 547(b).

11 U.S.C. § 547(b) provides, in its entirety, as follows:

§ 547. **Preferences.**

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

While the Defendant did not concede any of the elements of § 547(b), it became obvious, after consideration of the stipulation, review of the briefs and the positions advanced in two oral arguments, that the only issue reserved for resolution, besides standing, was whether the transfer enabled the Defendant to receive more than it would have received were the case filed under Chapter 7, the transfer had not been made, and the creditor received payment of this debt to the extent provided by the provisions of this Title. 11 U.S.C. § 547(b)(5). Both parties centered their argument on the meaning of the word "more" found in § 547(b)(5).

■■■ When interpreting a statute, a court must first examine the statutory language. *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), *citing Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982).

Is a Sheriff's sale a transfer under the general provisions of the Code?

Initially, I look to 11 U.S.C. § 101(54) for the definition of "transfer" which reads, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and *foreclosure of the debtor's equity of redemption.*"(Emphasis ours.) But are Sheriff's sales subject to avoidance under § 547?

The Defendant relies primarily on the case of *BFP v. Resolution Trust Corporation*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), and more specifically, how that court defined the phrase "reasonably equivalent value" found in § 548(a)(2). Citing *BFP*, Defendant argues that "reasonably equivalent value" does not mean either "fair market value" or "fair foreclosure price." The Defendant asserts that "reasonably equivalent value" for foreclosed property is the price received at the foreclosure sale so long as all the requirements of the state's foreclosure law were complied with. In this context, the Defendant basically asks this Court to ignore the stipulated market value of the property at $93,500 vis á vis either, the cost bid by the Defendant at the Sheriff's sale or the amount of total claim of the Defendant against the property. I have reviewed the *BFP* opinion and holding and the several

opinions cited by the Defendant which have applied the holding of *BFP* to tax sales. I have determined that *BFP* has absolutely no bearing on the instant issue concerning whether the Defendant in this prepetition Sheriff's sale has received "more" than that creditor would have received without the foreclosure sale and in a liquidation under Chapter 7 as contemplated by 11 U.S.C. § 547(b)(5).

There is not an abundance of case law addressing the issue as to whether the purchase of real property at a non-collusive, non-judicial foreclosure sale by a secured creditor within ninety days prior to the bankruptcy petition constitutes an avoidable preference under § 547(b). Several courts have addressed whether a creditor received "more" by way of a foreclosure sale. In *Ehring v. Western Community Moneycenter*, 900 F.2d 184 (9th Cir.1990), the creditor foreclosed on real estate by bidding, at the foreclosure sale, a price of $199,746.41. Within a short time thereafter, the creditor sold the property for $390,000. The court rejected an argument that it appeared the creditor received value greater than its debt. In a stressed explanation as to why it rejected that position, the court indicated,

> [i]f the creditor received "more" it is only because the creditor elected to purchase the property at the foreclosure sale rather than simply accepting the receipts of a sale to a third party. Had the third party outbid the creditor, there could be no preference because the price paid would not have been transferred for an antecedent debt. Since section 547 does not reach a third-party purchaser, it is difficult to see why the existence of a preference should turn on the status of the purchaser as a creditor. If the sale was defective or the purchaser otherwise took unfair advantage of the debtor, the transfer may be voided under section 548, regardless of whether the purchaser was the creditor or a third party. We see no reason to construe section 547 to permit avoidance of an otherwise properly conducted sale based solely on the creditor being the highest bidder.

*Id.* at 188.

█ The *Ehring* court seems to ignore the windfall to the secured creditor and did not discuss whether that windfall was consistent with the purpose of § 547 which is to prevent a creditor, or creditors, from stripping the debtor of assets that could be distributed to all creditors just prior to the filing of the bankruptcy.

In the *Matter of Park North Partners, Ltd. (Park North Partners, Ltd. v. Park North Associates )*, 85 B.R. 916 (Bankr. N.D.Ga.1988), the bankruptcy court on remand from the district court begrudgingly found that the defendant received more than it would have under a Chapter 7 liquidation. The bankruptcy court opined that under no circumstances should a non-judicial, prepetition foreclosure sale be avoidable under § 547. The court looked to the distribution scheme in §§ 726 and 507 and suggested that no provision was made for secured creditors and, further, that fully secured creditors are not entitled to a distribution of property of the estate. I disagree with this observation. In a Chapter 7 case, the Chapter 7 trustee will make a payment to the secured creditor from property of the estate prior to any other distributions including administrative expenses.

Citing the legislative history concerning the fifth element of the preference section, the *Park North* court writes that "the transfer must enable the creditor to or for whose benefit it was made to receive a greater percentage of his claim than he would receive under the distributive provisions of the bankruptcy code." *Id.* citing

H.R.Rep. No. 595, 95th Cong., 1st Sess. 372 (1977) U.S.Code Cong. & Admin.News 1978, 5787, 6328. With this I agree. Furthermore, the distributive provisions of the Bankruptcy Code do not provide that over and above the extent of its lien a secured creditor is entitled to a windfall by keeping the excess value which would otherwise be distributed by the trustee to the creditors of the estate.

An additional point advanced by the *Park North* court was that to hold a nonjudicial foreclosure sale a preference would have grave ramifications on the state system of foreclosures because foreclosures could be subject to avoidance if the debtor decided to file bankruptcy within ninety days of the foreclosure. Those foreclosures in which the successful bid was below the market value by any amount might be subject to avoidance. There may be ramifications on state foreclosure law, but that is a legislative matter.

The court in *In re FIBSA Forwarding Inc.,* found that prepetition foreclosure sales cannot be avoided under § 547. *In re FIBSA Forwarding Inc.,* 230 B.R. 334 (Bankr.S.D.Tx.1999) *affirmed, In re FIBSA Forwarding Inc.,* 244 B.R. 94 (S.D.Tx. 1999). Here, the lower court indicated that the decision in *BFP* was not directly on point concerning the issue as to whether the creditor received more than the creditor would have received in a Chapter 7 liquidation. The court did, however, rely on the *BFP* reasoning concerning the impingement upon important state interest should § 547 be read in a manner to permit the avoidance of prepetition foreclosure sales. The court indicated that there was no clear and manifest intention to displace traditional state regulations by the federal statute. "To hold this foreclosure to be a preferential transfer would create the same problems with state real property title records that would have been created by classifying that transaction as a fraudulent transfer." *FIBSA Forwarding, Inc.,* 230 B.R. at 341. The *FIBSA* court, like the *Park North* court, found that subjecting prepetition foreclosure sales to avoidance under § 547, will play havoc with the state court foreclosure schemes. I cannot make that leap.

The *FIBSA* court also writes the following,

> The apparent lesson of *BFP* is that if a creditor is oversecured, the Debtor must file a bankruptcy petition (or creditors must file an involuntary petition) before foreclosure to prevent the secured creditor from reaping a windfall at the expense of other creditors. If the Debtor does not do so, there would appear to be no protection for unsecured creditors who do not have knowledge of the foreclosure in time to file an involuntary petition.

*Id.*

But aren't unsecured creditors protected by § 547? Collier addresses this issue.

> The purpose of the preference section is twofold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during the debtor's slide into bankruptcy. The protection thus afforded the debtor often enables the debtor to work a way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter "the race of diligence" of credi-

tors to dismember the debtor before bankruptcy furthers the second goal of the preference section, that of equality of distribution. (Footnote omitted.)

5 Lawrence P. King, et al., Collier on Bankruptcy ¶ 547.01 at 547–9 (15th ed. rev. 2000).

The *FIBSA* court also addressed the practical benefit to the foreclosing creditor in that case and found that a reasonable businessman or businesswoman would have concluded that the bank in the *FIBSA* case received more in a foreclosure than it would have received in a Chapter 7 liquidation. The creditor bank would have received $19,500 in a Chapter 7, but in the transaction that was at issue, the bank received $27,250. Commenting on the *Ehring* case, the *FIBSA* court wrote that the only appellate decision directly on point held that this simple arithmetic did not satisfy § 547(b)(5).

■ Why not apply simple mathematics to this issue? If Congress intended some other result, it could have used terms such as "reasonably equivalent value" or adopted a bright line standard such as seventy percent of fair market value. See, for example, *Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980). Instead, it chose to use the term "more." This simple mathematical approach does not ignore the windfall to creditors of equity that would otherwise be distributed under the liquidation scheme of the bankruptcy code. In bringing the property back into the estate, the creditor's lien is not dissolved nor is its status as a secured creditor destroyed. It remains entitled to adequate protection and all of the other privileges and rights provided by the code to secured creditors. I, therefore, find that a prepetition bankruptcy foreclosure sale can be avoided under the dictates of 11 U.S.C. § 547 when the secured claim of the foreclosing party is substantially less than the fair market value of the property. In support, see *In re Wheeler*, 34 B.R. 818 (Bankr.N.D.Ala. 1983), *Matter of Fountain*, 32 B.R. 965 (Bankr.W.D.Mo.1983), *In re Park North Partners, Ltd.*, 80 B.R. 551 (N.D.Ga.1987), *In re Winters*, 119 B.R. 283 (Bankr. M.D.Fla.1990). In each of the cited cases, the secured creditor foreclosed on real estate by bidding at a foreclosure sale an amount less than the fair market value of the property. Each of the courts took a practical, plain language approach to the reading of the statutory language of § 547 and found that the creditor in each case received more by way of the prepetition foreclosure than that creditor would have received and been entitled to in a Chapter 7 liquidation.

■ Based upon the foregoing, the Court finds that the Plaintiff has met its burden under § 547(b) and I will avoid the prepetition transfer by way of Sheriff's sale of the property in question.

Finally, the avoidance of the prepetition transfer moots the Defendant's request to lift the automatic stay because the Defendant would no longer have equitable title to the property. Moreover, as I found earlier, Defendant did not meet its burden under § 362(g)(1) on the issue of lack of equity in the property.

An Order will follow.

### ORDER

For those reasons indicated in the Opinion filed this date, Plaintiff's request to avoid the prepetition Sheriff's sale of her real estate pursuant to 11 U.S.C. § 547(b) is hereby granted, and **IT IS FURTHER**

**ORDERED** that the Motion for Relief from the Automatic Stay is denied.